---

(173 App. Div. 455)

### ALLEN v. STATE.

(Supreme Court, Appellate Division, Third Department. June 30, 1916.)

MASTER AND SERVANT ⇐364—WORKMEN'S COMPENSATION ACT—"EMPLOYMENT"—PUBLIC EMPLOYÉ.

Under Workmen's Compensation Law (Consol. Laws, c. 67) § 3, subd. 3, defining "employer" as including the state, and subdivision 5, defining an "employment" as meaning employment in a business carried on for pecun-

iary gain, the state of New York, not being engaged in business for gain,. is not liable to an injured state highway employé.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. ☞364.. For other definitions, see Words and Phrases, First and Second Series,. Employment.]

Howard, J., dissenting.

Appeal from State Industrial Commission.

Proceeding under the Workmen's Compensation Law by Jane A. Allen against the State of New York. From a decision of the Commission denying compensation, she appeals. Affirmed.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOOD-WARD, and COCHRANE, JJ.

Rosendale, Hessberg, Dugan & Haines, of Albany (P. C. Dugan,. of Albany, of counsel), for appellant.

Egburt E. Woodbury, Atty. Gen., and Robert W. Bonynge, of New York City (Harold J. Hinman, Deputy Atty. Gen., of counsel), for the State.

WOODWARD, J. On the 20th day of October, 1915, Charles R. Allen was in the employ of the highway department of the state of New York, and engaged as a foreman of a concrete gang, which was. doing maintenance and repair work on state road No. 5338a, in the town of Sanford, Broome county. The state, for reasons which are set forth in the record, was doing its own repair work by its own equipment and force, and the commission found as a fact that the decedent received his injuries while he was employed as a foreman of a concrete gang of the state highway department of maintenance and repairs, which department had charge of the maintenance and. repair of the state and county highways; also that the deceased, at the time he was injured, was steering the tongue of a concrete mixer,. the front wheel of which struck a plank and threw him against a. section of the concrete wall, fracturing his skull, resulting in his death on the following day; that the injuries were accidental, resulting out of and in the course of his employment; that his average wages were. $23.08 per week; and that the claimant, his mother, was dependent upon him for support. Having found these facts, the commission refused to allow the claim, on the ground that the state of New York,. through its highway commission, was not engaged in business for pecuniary gain. The claimant appeals from this determination.

We quite agree with the appellant's assertion that "by the amendment of subdivision 3 of section 3 of the Workmen's Compensation Law (chapter 316, Laws of 1914) the state is included within the meaning of the word 'employer' as used in that statute, and it stands. in no different position with respect to this law than any other employer"; but it by no means follows that the commission erred in its. ruling, for the statute provides in subdivision 5, which has not been. amended, that " 'employment' includes employment only in a trade,. business or occupation carried on by the employer for pecuniary gain," and no one can, within the meaning of the Workmen's Compensation Law, be an employer unless he is "employing workmen in hazardous

employments," and such employments are only those which are carried on for pecuniary gain. The statute, which required an amendment of the fundamental law of the state to give it vitality (Const. N. Y. art. 1, § 19, as amended by the people in November, 1913; Ives v. Buffalo Ry. Co., 201 N. Y. 271, 94 N. E. 431, 34 L. R. A. [N. S.] 162, Ann. Cas. 1912B, 156), does not undertake to pay compensation to those injured in all hazardous employments, but only to those engaged in the particular employments pointed out by the statute, and these are in turn limited by the definition of the word "employment" to "a trade, business or occupation carried on by the employer for pecuniary gain." We cannot close our eyes to these limitations; we cannot charge an individual, association, or corporation with responsibility for accidents occurring in occupations, however hazardous, unless those occupations are embraced within some of the groups enumerated in section 2 of the law, nor unless they are being carried on for "pecuniary gain." This is not only the letter of the law, but it is the spirit of the underlying constitutional provision above cited, which authorizes this class legislation, "provided that all moneys paid by an employer to his employés or their legal representatives, by reason of the enactment of any of the laws herein authorized, shall be held to be a proper charge in the cost of operating the business of the employer." Const. N. Y. art. 1, § 19.

The theory of the law, and of the underlying constitutional authorization, is that the accidents growing out of the operation of industrial enterprises become a legitimate part of what is known in commercial life as the "overhead" cost, the same as the breakage, wear, and tear of machinery and equipment, and it is only in those industries which are carried on for pecuniary gain that "the cost of operating the business" can be taken care of in the fixing of the price of the product. See Ives Case, 201 N. Y. 286, 94 N. E. 431, 34 L. R. A. (N. S.) 162, Ann. Cas. 1912B, 156; Const. N. Y. art. 1, § 19. No provision has ever been made, so far as we are informed, for the state to take care of the accidental injuries of employés in the maintenance of state highways; no suggestion of any method is made by which the cost of the injuries can be added to the "cost of operating the business"; and it is only where this may be done that the statutes are within the provisions of the Constitution. By confining the statute to the limitations fixed by the definitions found in section 3 of the act, the law becomes harmonious with the letter and the spirit of the Constitution, while the construction contended for by the appellant would defeat such harmony and make the act itself questionable, to say the least. It is true, of course, that where the state contracts for work of a hazardous nature, as defined in the statute, the contractor, who carries on the work, is called upon to provide for these accidents, for he is carrying on the business for pecuniary gain, but he is enabled to include this charge in his contract price of the work to be performed; but no such power is given to the highway commission in carrying on the work of maintaining the highways, and, as it is not engaged in this work for the purposes of pecuniary gain, it cannot be that the state is to become an insurer of its employés, under conditions where such

insurance would not be required of an individual, association, or corporation. If the state was operating the highways, as it might operate a railroad (Olcott v. Fond du Lac County, 16 Wall. 678, 21 L. Ed. 382; East Alabama Railway Company v. Doe, 114 U. S. 340, 350, 5 Sup. Ct. 869, 29 L. Ed. 136), there would be an opportunity for the collection of fares and tolls, and it would be operated for pecuniary gain; but by the mere governmental act of maintaining the highways it does not come within the provisions of the statute, and the commission properly refused to grant the award demanded.

In June, 1914, immediately after the passage of the act, the then chairman of the State Workmen's Compensation Commission addressed a letter to the then Attorney General of this state, asking "specifically whether the provisions of subdivision 5 of section 3 applies limiting employment to a trade, business, or occupation carried on by the employer for pecuniary gain," and in answering that question the learned Attorney General aptly says:

"There is no liability created by this act except by virtue of its provisions, and it cannot logically be urged that a statute which expressly limits its application to certain employments can be extended to include other employments. When by the amendment of 1914 the state and its political divisions were included within the definition of 'employer,' no greater or different liability was imposed than that provided by the statute itself as to employers in general. When the Legislature placed these governmental agencies within the duties and liabilities of the law, it cannot be said to have thereby extended the measure of their obligations beyond such duties and liabilities." 2 State Department Reports, 568.

This seems to us the logical and complete answer to the appellant's contention. The amendment simply placed the state and its local political divisions upon the same footing as individuals and corporations, and the fact that the state may not conduct any business for pecuniary gain has no more bearing on the proper construction of the law than the fact that many individuals and corporations do things of a hazardous character without the purpose of pecuniary gain. The state has the power to engage in business undertakings for the purpose of securing pecuniary gain; the fact that it does not do so does not tend to show that the Legislature intended to increase the liability of the state beyond that of corporations and individuals, and it is not the province of the courts to enlarge upon the clearly expressed or necessarily implied scope of statutes changing the rules of the common law.

The determination appealed from should be affirmed. All concur, except HOWARD, J., who dissents.