JOHN BLATTNER v. LOYAL ORDER OF MOOSE, MOOSE CLUB LODGE NO. 1400, AND ANOTHER.

117 N. W. (2d) 570.

October 26, 1962—No. 38,424.

*Robb, Robb & Van Eps* and *Garland C. Brandt,* for relators.
*Roger J. Nierengarten,* for respondent.

OTIS, JUSTICE.

Certiorari to review a decision of the Industrial Commission affirming a referee's determination that the employee-respondent is entitled to compensation for injuries received while employed by employer-relator. The only issue raised is whether or not the accident occurred during respondent's "hours of service" within the meaning of the statute.

The employee, John Blattner, was 71 years of age at the date of the accident, June 22, 1959. For several years he had been regularly employed as a doorman by relator, Moose Club Lodge No. 1400, in its clubhouse at Waite Park. His duties consisted of examining the dues receipts of patrons as they came in to determine whether they were paid-up members. Although the bartender remained on duty and

the clubhouse was open until 1 a. m., it appears without dispute that the respondent's specified hours of employment were from 3 p. m. until midnight. He worked only on Sundays and received a salary of 75¢ an hour or $6 a day. Mr. Blattner's home was in St. Cloud, some 2 miles from the clubhouse. He had no automobile of his own and depended on his sister to drive him to work. Transportation back to his home was something of a problem. Apparently he managed to secure a ride with one of the members, the bingo operator, or the bartender almost every week, but was occasionally obliged to take a cab. There was some conflict in the testimony as to the frequency with which the bartender drove him, the bartender stating it was only four or five times, while the employee said he "generally" did so. The manager of the club was aware of these transportation arrangements.

On the night of the accident the employee finished his work at midnight, and, having been assured of a ride by the bartender, sat on a bar stool waiting for the club to close. The evidence is undisputed that during this interval he remained in one place, had nothing to drink, and occupied his time visiting with whoever was at hand. At 1 a. m. the bartender suggested that Mr. Blattner go out and get in his car, parked in front of the building, while he put the receipts in the safe and locked up, a procedure which ordinarily took about 15 minutes. The employee left by the supply door, and as he stepped from a concrete platform or curb he tripped over a ledge, as a result of which he fell and fractured his hip.

The conditions under which an employee is entitled to compensation under our statute are defined in Minn. St. 176.011, subd. 16, as follows:

" 'Personal injury' means injury arising out of and in the course of employment * * *; but does not cover an employe *except* while engaged in, on, or about the premises where his services require his presence as a part of such service at the time of the injury *and during the hours of such service*. * * *" (Italics supplied.)

Our court early decided that under the Minnesota Workmen's Compensation Act the employer had a duty to furnish employees safe ingress and egress on its premises, and that "hours of service" in-

cluded a period when this might be accomplished in a reasonably prompt time.[1] The test is whether the accident occurred at a time when the employee was being of service to the employer, which may or may not coincide with the period for which wages are paid.[2] In arriving at a determination of what is reasonably prompt ingress or egress, a significant, if not decisive, factor is whether or not the early arrival or the protracted delay in leaving resulted from the employee's pursuing a personal mission unrelated to the purposes of his employment.[3]

In the light of all of the circumstances here present we hold that the commission was justified in finding the employee was reasonably prompt in leaving the premises after his duties terminated.

A number of courts have passed on this question. In Yeager v. Chapman, 233 Minn. 1, 45 N. W. (2d) 776, 22 A. L. R. (2d) 1260, which was not sued under the Workmen's Compensation Act, plaintiff was injured when she appeared at her place of employment an hour early in order to make a hair-dressing appointment. This we said was a personal mission unrelated to her duties. Because her employment was not a "significant factor" in exposing her to injury, we held there was no error in finding plaintiff was not acting in the course of her employment and was therefore at liberty to pursue her common-law remedies. However, we reached a contrary conclusion in a prior decision under the Workmen's Compensation Act. Novack v. Montgomery Ward & Co. 158 Minn. 495, 198 N. W. 290. There an employee was injured when she arrived at work 20 minutes before starting time but her presence was not prompted by personal considerations, and we held that the time was reasonable, suggesting that the uncertainty of contending with winter traffic was a factor the employee could consider in planning the time of her arrival.

---

[1]Lienau v. Northwestern Tel. Exch. Co. 151 Minn. 258, 186 N. W. 945.

[2]Simonson v. Knight, 174 Minn. 491, 495, 219 N. W. 869, 870; Olson v. Trinity Lodge, 226 Minn. 141, 145, 32 N. W. (2d) 255, 258.

[3]Yeager v. Chapman, 233 Minn. 1, 6, 45 N. W. (2d) 776, 780, 22 A. L. R. (2d) 1260; Fabio v. City of St. Paul, 181 Minn. 601, 603, 233 N. W. 467, 468.

In other jurisdictions, decisions which have denied recovery have hinged largely on there being a deviation from the purposes incidental to the employer's business. Great American Ind. Co. v. Britton (D. D. C.) 186 F. Supp. 938, 944, held that musicians who were killed by gunmen while loitering after work at a bar on the employer's premises were not employees under the act at the time of their death. The court recognized the rule that employees have a reasonable time within which to leave the premises, but found they tarried for their own purposes, it being quite apparent (without the court so stating) that they were patronizing the bar when they were killed. National Biscuit Co. v. Litzky (6 Cir.) 22 F. (2d) 939, 56 A. L. R. 853, came to a similar conclusion when an employee, after her discharge, did not leave the premises directly but ate her lunch in a dining room provided by the employer and was thereafter injured while coming down in an elevator. However, a different result was reached by the Arizona court in Nicholson v. Industrial Comm. 76 Ariz. 105, 259 P. (2d) 547, where an employee, who was released at noon and not required to return until the next morning, was killed while eating lunch under a platform which collapsed. In a well-considered opinion the Arizona court held that the deceased employee was covered by the act and was neither loitering nor engaged in an endeavor separate and apart fom his employment at the time of his death.

A decision which we believe singularly analogous to the instant case is Babkees v. Electrolux Corp. 4 App. Div. (2d) 710, 163 N. Y. S. (2d) 809. In that case a physically handicapped employee remained at her desk an hour after work, waiting for her husband to pick her up. During that time she performed no service for the employer. While leaving she tripped and was injured. The court affirmed the compensation board's findings that the injury occurred in the course of her employment, and that her presence was a benefit to the employer who would otherwise have been deprived of her services.

A Pennsylvania trial court has found that an employee who was injured while waiting from 15 minutes to three-quarters of an hour for his son to drive him home remained in the course of his employment while on his employer's premises. Fronczek, Admr. v. Independent Mfg. Co. 59 Pa. D. & C. 612. The court pointed out that there was

no evidence a more direct route was available from the place of employment to the main gate and that the employee did nothing to deviate from it in leaving the premises. The waiting period was held not to be unreasonable.

Both respondent and relators cite Olson v. Trinity Lodge, 226 Minn. 141, 32 N. W. (2d) 255, as controlling. There a part-time janitor who resided in the lodge building was injured in front of the premises while returning from his regular employment intending to go to his room and thereafter fire the furnace. We stated (226 Minn. 145, 32 N. W. [2d] 258):

"* * * The term 'hours of service' must not be construed so narrowly as to include only that time for which the worker is paid or only those moments which he actually spends at a shovel, machine, or workbench. An injury to a workman may arise out of and in the course of his employment even if he is not actually working at the time of his injury."

The relators contend that in the instant case there was not the identity of time and destination which was present in the Olson situation. We think otherwise. We have regarded as immaterial whether the employee was entering or leaving the place of employment, provided the injury occurred on the premises.

The decisive issue is whether Mr. Blattner's delay in departure was for a personal purpose unrelated to his employment, or whether this arrangement was of benefit to the employer. It is significant that the employee was not deviating from a normal route of departure when he was injured. He did not linger at the bar for personal pleasure but only to secure the transportation which was necessary to his work. He was not aimlessly loitering or pursuing a purpose wholly divorced from his employment. Because of his extremely modest salary it can be presumed that the number of candidates for the position was limited and that it was therefore to his employer's advantage to facilitate his transportation in order to assure his availability. There is nothing in the record to indicate the delay in any way increased the hazards of his employment or enlarged his exposure to danger.

We have consistently stressed the remedial nature of the Workmen's

84

Compensation Act and have declined to give it a strict or narrow construction.[4] The findings of the Industrial Commission will not be disturbed unless the evidence compels reasonable minds to adopt a contrary conclusion.[5] Taking into consideration the purpose of the delay, the manner in which he occupied the time, his age, his wages, the hour of the night at which his duties ended, the location of his employment, and the distance he was required to travel, we hold that the circumstances justified the Industrial Commission in finding the employee left the premises within a reasonable period of time after his work terminated and that he was therefore in the course of his employment when injured and entitled to compensation.

Respondent is allowed $250 attorney's fees.

Affirmed.

---

[4]Nelson v. City of St. Paul, 249 Minn. 53, 81 N. W. (2d) 272; Olson v. Trinity Lodge, 226 Minn. 141, 32 N. W. (2d) 255.
[5]Fink v. Cold Spring Granite Co. 262 Minn. 393, 406, 115 N. W. (2d) 22, 31.